Filed 7/19/21

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SERGIO TIMOTHY PINEDA,<br><br>    Defendant and Appellant. | H047709<br>(Santa Clara County<br> Super. Ct. No. CC319535) |

Defendant Sergio Timothy Pineda appeals from the denial of his Penal Code section 1170.95[1] petition for failure to make a prima facie showing of entitlement to relief. His appeal presents a question that has divided the courts of appeal and is currently pending before the California Supreme Court: Does a felony-murder special circumstance finding (§ 190.2, subd. (a)(17)) that was made before *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*) were decided preclude a defendant from making a prima facie showing of eligibility for relief under section 1170.95? (*People v. Strong* (Dec. 18, 2020, C091162) [nonpub. opn.], review granted March 10, 2021, S266606 (*Strong*).) We hold that Pineda is entitled to a judicial determination as to whether his conduct is proscribed by the special circumstances statute, as construed in *Banks* and *Clark*, before his section 1170.95 petition may be summarily denied. Accordingly, we reverse and remand the matter to the trial court to make that determination in the first instance.

---

[1] All further statutory citations are to the Penal Code unless otherwise indicated.

## I. BACKGROUND

### A. *Factual Summary*[2]

On the evening of July 9, 2003, Pineda and his close friend Alex Rosales went out to several bars in San Jose. Sometime after midnight, they drove in Pineda's silver Mazda to get some food. On the way, they encountered Jose Luis Ramirez. Rosales testified that Pineda said of Ramirez, "This guy is really drunk, I'm going to rob him." Pineda invited Ramirez to come to a party. Ramirez agreed and followed the Mazda in his truck. A couple of streets away, the vehicles stopped. Pineda directed Ramirez to park in an alley.

Pineda then beat Ramirez with a baseball bat, hitting him between eight and 10 times in the head and the body. A man riding his bicycle nearby saw the beating and reported it to police. After Ramirez fell to the ground, Pineda went through his pockets. Pineda then returned to the Mazda and drove a short distance away, leaving Ramirez lying in the street. Pineda looked at the items he had stolen. According to Rosales, when Pineda realized he had not gotten any money from Ramirez, Pineda turned the car around and drove back in the direction of Ramirez. Pineda got out of the car and got into Ramirez's truck. Rosales moved to the driver seat of the Mazda, stepped on the gas, hit Ramirez and dragged him down the street, reversed the vehicle to get off Ramirez's body, and then drove away because he saw the flashing lights of police cars approaching. Rosales testified that he hit Ramirez accidentally, having lost track of where Ramirez was in relation to the car. Pineda drove away in Ramirez's truck, following Rosales in the Mazda.

---

[2] We take the facts from our prior opinion in *People v. Pineda, et al.* (May 4, 2006, H028625, H028891) [nonpub. opn.], and from the appellate record in that case. On our own motion, we take judicial notice of that prior opinion. (Evid. Code, §§ 452, subd. (d), 459.) The appellate record from Pineda's direct appeal is part of the appellate record in this matter, having been submitted below as an exhibit to the prosecutor's opposition to Pineda's petition.

After a long car chase, during which Rosales evaded being stopped, officers pulled over Pineda in the truck. Pineda had blood on his shirt, pants, arms, hands, and head. One of the officers asked him if he knew who was driving the Mazda. Pineda responded, "He didn't have anything to do with this. I did what I did for my own reason. I was the only one involved. And I know my rights and that's all I'm going to say to you." Officers found a baseball bat in the truck.

Rosales and the Mazda were located the following day. Ramirez's blood was found on the fenders, wheel wells, splashguards, and undercarriage of the Mazda as well as inside the vehicle. Ramirez's watch and credit card were inside the Mazda.

Officers found Ramirez face down in the street, bleeding. He died from his wounds. An autopsy showed that Ramirez died as a result of multiple blunt force crush injuries to his chest that were consistent with him having been run over by a car. He also had sustained injuries consistent with having been dragged along the pavement or a road surface and burns consistent with having been exposed to the hot undercarriage of a car. Finally, he had abraded lacerations of the head consistent with having been hit about 10 times with an elongated object like a baseball bat; those injuries were not lethal or potentially lethal.

### B.    *Procedural History*

The Santa Clara County District Attorney charged Pineda and Rosales with first degree murder (§ 187, count 1), second degree robbery (§§ 211, 212.5, subd. (c), count 2), and carjacking (§ 215, count 3). As to each defendant, the information included a felony-murder special circumstance allegation. (§§ 211, 212.5, 190.2, subd. (a)(17)(A).)

In 2005, following a joint trial, the jury returned verdicts of guilty as to all counts and found the special circumstance allegations to be true. The trial court sentenced Pineda to life without the possibility of parole on the murder count and stayed the

sentence on counts 2 and 3 pursuant to section 654. This court affirmed Pineda and Rosales's convictions in an opinion issued on May 4, 2006.

In January 2019, Pineda filed a section 1170.95 petition on his own behalf. The petition alleged that an information was filed against Pineda that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine, that Pineda was convicted of first or second degree murder pursuant to the felony-murder rule or the natural and probable consequences doctrine, and that Pineda could not now be convicted of first or second degree murder because of the changes to Penal Code sections 188 and 189, effective January 1, 2019 because he was not the actual killer; he did not, with the intent to kill, aid, abet, counsel, command, induce, solicit, request, or assist the actual killer in the commission of murder in the first degree; he was not a major participant in the felony nor did he not act with reckless indifference to human life during the commission of a felony; and the victim was not a peace officer in the performance of his duties.

The trial court appointed counsel to represent Pineda. After briefing and a hearing, the trial court denied the petition without issuing an order to show cause. The court concluded that the felony-murder special circumstance finding precluded Pineda from making a prima facie showing of eligibility for relief under section 1170.95. Pineda timely appealed.

## II. DISCUSSION

### A. *Legal Principles*

#### 1. *Senate Bill No. 1437*

Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437), which became effective on January 1, 2019, was enacted to "amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless

4

indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) "Under the felony-murder rule as it existed prior to Senate Bill 1437, a defendant who intended to commit a specified felony could be convicted of murder for a killing during the felony, or attempted felony, without further examination of his or her mental state." (*People v. Lamoureux* (2019) 42 Cal.App.5th 241, 247-248.) As amended by Senate Bill 1437, section 189, subdivision (e) provides that a participant in a specified felony is liable for murder for a death during the commission of the offense only if he or she was the actual killer; acted with the intent to kill in aiding, abetting, counseling, commanding, inducing, soliciting, requesting, or assisting in first degree murder; or "was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of [s]ection 190.2." (§ 189, subd. (e)(3).)

Senate Bill 1437 also enacted section 1170.95, subdivision (a), "which establishes a procedure for vacating murder convictions for defendants who could no longer be convicted of murder under the new law and resentencing such defendants. (Stats. 2018, ch. 1015, § 4.)" (*People v. Allison* (2020) 55 Cal.App.5th 449, 455 (*Allison*).) A person is entitled to relief under section 1170.95 only if certain conditions are met, including that he or she "could not be convicted of first or second degree murder because of changes to [s]ection 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a)(3).)

> 2. *The Felony-Murder Special Circumstance*

Section 190.2 enumerates "special circumstances" that, if found true, make a defendant convicted of first degree murder punishable by death or life imprisonment without the possibility of parole. One such special circumstance is the felony-murder special circumstance. The requirements of the felony-murder special circumstance mirror the post-Senate Bill 1437 requirements of felony murder. (*Allison*, *supra*, 55 Cal.App.5th at p. 457 (citing § 190.2, subds. (b)-(d); Prop. 196, as approved by voters, Gen. Elec. (Mar. 26, 1996) [amending § 190.2].) That is, the felony-murder special

circumstance applies where (1) the murder occurred during the commission of a specified felony and (2) the defendant was the actual killer; with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted in the commission of the murder; or with reckless indifference to human life and as a major participant, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted in the commission of the felony.  (§ 190.2, subds. (a)(17), (c), (d).)

### 3.  Banks, Clark, *and the Meanings of* "*Reckless Indifference to Human Life*" *and* "*Major Participant*"

In *Banks* and *Clark*, the California Supreme Court clarified the meaning of the felony-murder special circumstances statute.  (*In re Scoggins* (2020) 9 Cal.5th 667, 671 (*Scoggins*).)  *Banks* considered the major participant aspect of the statute and concluded that "[t]he ultimate question pertaining to being a major participant is 'whether the defendant's participation "in criminal activities known to carry a grave risk of death" [citation] was sufficiently significant to be considered "major" [citations].[]'  [Citation.]" (*Clark*, *supra*, 63 Cal.4th at p. 611.)  The court identified the following factors as being relevant to that determination:  "What role did the defendant have in planning the criminal enterprise that led to one or more deaths?  What role did the defendant have in supplying or using lethal weapons?  What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants?  Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inactions play a particular role in the death?  What did the defendant do after lethal force was used?" (*Banks*, *supra*, 61 Cal.4th at p. 803, fn. omitted.)

*Clark* articulated case-specific factors that are relevant to whether a defendant exhibited reckless indifference to human life:  (1) the defendant's knowledge of weapons, number of weapons, and whether the defendant used a weapon; (2) the defendant's physical presence at the crime and opportunities to restrain the crime and/or aid the

victim; (3) the duration of the felony; (4) the defendant's knowledge of a cohort's likelihood of killing; and (5) the defendant's efforts to minimize the risks of violence during the felony.  (*Clark*, *supra*, 63 Cal.4th at pp. 618-622.)

A defendant with a pre-*Banks* and *Clark* felony-murder special-circumstance finding whose conviction became final prior to *Banks* and *Clark* may file a petition for habeas corpus seeking to have the finding invalidated.  Such a defendant "is entitled to habeas corpus relief ' "if there is no material dispute as to the facts relating to his conviction" ' " and "the special circumstances statute as construed in *Banks* and *Clark*" did not prohibit his conduct.  (*Scoggins*, *supra*, 9 Cal.5th at p. 676.)

### 4. Split Among the Courts of Appeal

This court has yet to decide whether a pre-*Banks* and *Clark* felony-murder special-circumstance finding bars section 1170.95 resentencing relief; the other Courts of Appeal are split on the issue.  "[S]ome courts [have held that] a section 1170.95 petitioner must always mount a successful collateral attack on a prior felony-murder special-circumstance finding against him—no matter when it was made—and until he does so, he cannot plead a prima facie case under section 1170.95, subdivision (c) as a matter of law."  (*People v. Secrease* (2021) 63 Cal.App.5th 231, 252 (*Secrease*) [fn. omitted; citing *People v. Gomez* (2020) 52 Cal.App.5th 1, 17, review granted Oct. 14, 2020, S264033; *People v. Galvan* (2020) 52 Cal.App.5th 1134, 1142, review granted Oct. 14, 2020, S264284; *People v. Jones* (2020) 56 Cal.App.5th 474, 483-484, review granted Jan. 27, 2021, S265854; *Allison*, *supra*, 55 Cal.App.5th at p. 459, fn. 9]; see *People v. Simmons* (2021) 65 Cal.App.5th 739 ["We find more persuasive those cases holding that a special circumstance finding precludes relief as a matter of law."].)  "The courts so holding point out that major participation and reckless disregard of human life have always been required elements of a special circumstance finding under section 190.2, subdivisions (a)(17) and (d).  And because revisiting those issues in a section 1170.95

7

proceeding, ' "in effect," ' amounts to an attack on a valid special circumstance finding, these courts take the view that a defendant in [Pineda's] position must first invalidate the special circumstance finding before he may seek section 1170.95 relief. [Citations.] In this view, it is not the changes to sections 188 and 189 that potentially render such a defendant's murder conviction invalid under current law; it is the *Banks* and *Clark* decisions that have that effect, which is why the remedy of habeas corpus must be sought in the first instance. [Citation.]" (*Secrease*, *supra*, at pp. 252-253, fn. omitted.)

"Other courts do not impose a requirement that a section 1170.95 petitioner who seeks resentencing in the face of a prior jury finding under section 190.2, subdivision (a)(17) must first obtain habeas corpus relief, and hold that he may opt to pursue relief by attacking his murder conviction—not his special circumstance finding— on the ground that, under current law as revised by Senate Bill 1437, he could no longer be convicted of murder." (*Secrease*, *supra*, 63 Cal.App.5th at p. 253 [citing *People v. Torres* (2020) 46 Cal.App.5th 1168, 1179-1180, review granted Jun. 24, 2020, S262011; *People v. Smith* (2020) 49 Cal.App.5th 85, 93-94, review granted Jul. 22, 2020, S262835; *People v. York* (2020) 54 Cal.App.5th 250, 259-261, review granted Nov. 18, 2020, S264954); *People v. Harris* (2021) 60 Cal.App.5th 939, 956-958, review granted Apr. 28, 2021, S267802]; see *People v. Gonzalez* (2021) 65 Cal.App.5th 420 [adopting the holding in *York*].) "According to these courts, if the petitioner obtains vacatur of a prior special circumstance finding in a section 1170.95 proceeding, that is because the statute expressly requires it as a 'collateral consequence' of the resentencing relief to which a successful section 1170.95 petitioner is entitled. [Citation.] [¶] These courts see no basis to graft what is, in effect, an exhaustion requirement onto section 1170.95, thereby forcing petitioners with felony-murder special-circumstances findings to obtain habeas relief first, before seeking section 1170.95 resentencing. In their view, because *Banks* and *Clark* 'construed section 190.2, subdivision (d) in a significantly different, and narrower manner than courts had previously construed the statute' [citation], it is not

8

appropriate to give a pre-*Banks* and *Clark* felony-murder special-circumstance finding preclusive effect." (*Secrease*, *supra*, at pp. 253-254.)

The court in *Secrease* adopted what it characterized as "a middle ground between these two lines of cases." (*Secrease*, *supra*, 63 Cal.App.5th at p. 247.) *Secrease* "agree[d] with the courts concluding that [petitioners with a pre-*Banks* and *Clark* felony-murder special-circumstance finding are] not barred as a matter of law from pleading a prima facie case for relief under section 1170.95, subdivision (c)" *and* "with a critical premise of the courts reaching the opposite conclusion—specifically, that section 1170.95 does not allow relitigation of factual questions that were settled by a prior jury . . . ." (*Ibid*.) Accordingly, *Secrease* held that "where a petitioner facing a felony-murder special-circumstance finding has never been afforded a *Banks* and *Clark* sufficiency-of-the-evidence review—by any court, at the trial or appellate level—section 1170.95 courts have an obligation to undertake such an analysis at the prima facie entitlement-to-relief stage of a resentencing proceeding under subdivision (c) of the statute." (*Id*. at p. 255.)

The Supreme Court has granted review on the issue of whether a felony-murder special circumstance finding under section 190.2, subdivision (a)(17) made before *Banks* and *Clark* precludes a defendant from making a prima facie showing of eligibility for relief under section 1170.95. (*Strong*, *supra* (Dec. 18, 2020, C091162) [nonpub. opn.], review granted.)

### B.     Analysis

We find *Secrease* to be persuasive and follow the middle-ground approach adopted there. Pineda is entitled to a judicial determination as to whether his conduct is proscribed by the special circumstances statute, as construed in *Banks* and *Clark*. (*Secrease*, *supra*, 63 Cal.App.5th at p. 259; *Scoggins*, *supra*, 9 Cal.5th at p. 674.) We remand the matter to the trial court to make that determination. As was the case in *Secrease*, "we are remanding the case for resumption of proceedings at the section 1170.95, subdivision (c) entitlement-to-relief stage of the process, where the

9

court's task will be narrowly focused on whether, without resolving conflicts in the evidence and making findings, the evidence presented at trial was sufficient to support the felony-murder special-circumstance finding under *Banks* and *Clark*. If the answer to that is yes, the section 190.2, subdivision (d) finding made against [Pineda] forecloses him from further litigating that issue, thus rendering him ineligible for resentencing relief as a matter of law. If the answer is no, an order to show cause must issue and an evidentiary hearing must be held under section 1170.95, subdivision (d)(3)." (*Secrease, supra,* at p. 264.)

Secrease suggests that the determination described above can be made in the first instance on appeal where the appellate record is adequate. (*Secrease, supra,* 63 Cal.App.5th at pp. 255, 260-261.) Here, the full record of conviction is before us. However, the parties have not briefed the issue as we have framed it—namely, whether "the [trial record] evidence meets the minimum threshold of personal culpability set by *Banks* and *Clark*." (*Id.* at p. 261.) Remand will afford the parties the opportunity to fully develop their positions on this potentially dispositive issue with the full benefit of the guidance set forth here and in *Secrease*.

## III.   DISPOSITION

The order denying Pineda's petition is reversed and the matter is remanded to the trial court for further proceedings consistent with this opinion.

 

_____

ELIA, ACTING P.J.

WE CONCUR:

_____

BAMATTRE-MANOUKIAN, J.

_____

DANNER, J.

*People v. Pineda*
H047709

Trial Court:                                         Santa Clara County Superior Court
Superior Court No: CC319535


Trial Judge:                                         Honorable Linda R. Clark


Counsel for Plaintiff and Respondent:     Xavier Becerra
THE PEOPLE                                  Attorney General

                                                    Lance E. Winters
                                                    Chief Assistant Attorney General

                                                    Jeffrey M. Laurence
                                                    Senior Assistant Attorney General

                                                    René Chacón
                                                    Supervising Deputy Attorney General

                                                    David M. Baskind
                                                    Deputy Attorney General

Counsel for Defendant and Appellant:     Scott D. Handleman
SERGIO TIMOTHY PINEDA                  By appointment of the Sixth District Appellate Program